**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **BARBARA MORROW KEETON**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HORIZON FINANCIAL MANAGEMENT LLC d/b/a HORIZON HEALTHCARE RCM**,<br><br>Defendant. | No. 2:25-cv-00356-HAB-ALT<br><br>**DEMAND FOR JURY TRIAL** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Barbara Morrow Keeton ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant HORIZON FINANCIAL MANAGEMENT LLC d/b/a HORIZON HEALTHCARE RCM ("Horizon" or "Defendant") on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2. The Data Breach resulted in unauthorized disclosure, exfiltration, theft, and dissemination on the dark web of Defendant's clients' current and former patients' highly personal information, including names, dates of birth, Social Security numbers, driver's license numbers, passport numbers, payment card information, checking or financial account information,

("personally identifying information" or "PII"), and medical information, such as health insurance claims processing information and medical record numbers ("protected health information" or "PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3. Horizon's Data Breach affects current and former patients of Defendant's clients who had no relationship with Horizon, never sought one, and never consented to Horizon collecting and storing their information.

4. Horizon sourced their information from third parties, stored it on its systems, and assumed a duty to protect it, advertising that it "will take all steps reasonably necessary to ensure that your data is treated securely..."[1] But Horizon never properly implemented the security safeguards it promised despite acknowledging their importance.

5. According to the "Notice of Data Security Incident" ("Breach Notice[2]") posted on Horizon's website, the Data Breach occurred on or around December 27, 2024.[3] Due to the paltry amount of information Horizon has provided about the Data Breach, it is unknown how it became aware it was hacked by cybercriminals. However, on information and belief, Horizon began notifying breach victims on June 27, 2025[4], *182 days* after the Data Breach occurred.

6. It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to the Sensitive Information in Defendant's care.

---

[1] *Privacy Policy*, HORIZON, https://www.horizonhealthcarercm.com/privacy-policy/ (last visited August 5, 2025).
[2] Horizon's Breach Notice is attached hereto as **Exhibit A**.
[3] Expert Report at 1 (I).
[4] *Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/77385ffe-5135-492d-a928-76d345819a3c.html (last visited August 5, 2025).

7. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Sensitive Information. In short, Defendant's failures placed the Class's Sensitive Information in a vulnerable position—rendering them easy targets for cybercriminals.

8. Plaintiff is a Data Breach victim, having received Defendant's Breach Notice. Plaintiff brings this class action on behalf of herself and all others harmed by Defendant's misconduct.

9. The exposure of one's Sensitive Information to cybercriminals is a bell that cannot be unrung. Before this data breach, Class Members' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

10. Plaintiff Barbara Morrow Keeton is a natural person and citizen of South Carolina, residing in Taylors, South Carolina, where she intends to remain. Plaintiff Keeton is a Data Breach victim, having received Defendant's Breach Notice.

11. Defendant, Horizon Financial Management LLC d/b/a Horizon Healthcare RCM., is Indiana Limited Liability Company with its principal place of business at 9980 Georgia Street, Crown Point, IN, 46307.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class and Plaintiff and Defendant are citizens of different states.

13. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

***Horizon Collects the Sensitive Information of Plaintiff and the Class***

15. Horizon is a "is a healthcare revenue cycle management company" that assists healthcare entities to "improve their cash flow and grow their revenue."[5]

16. Horizon states it is founded on a "right-action business philosophy" which involves "revenue-enhancing outsourcing programs."[6]

17. As part of its business, Defendant receives and maintains the Sensitive Information of thousands of its clients' current and former patients. In collecting and maintaining the Sensitive Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their Sensitive Information.

18. Indeed, Horizon boasts it has "invested heavily in cybersecurity and has the software to ensure the integrity of patient information" and that it "provides a controlled environment" that promotes, *inter alia*, "security" and "confidentiality."[7]

19. Furthermore, in its Privacy Policy, Horizon states it "will take all steps reasonably necessary to ensure that your data is treated securely and in accordance with this Privacy Policy

[5] *Horizon Healthcare RCM*, LINKEDIN, https://www.linkedin.com/company/horizon-financial-management/ (last visited August 5, 2025).
[6] *About Us*, HORIZON, https://www.horizonhealthcarercm.com/about/ (last visited August 5, 2025).
[7] *Id.*

and no transfer of your Personal Data will take place to an organization or a country unless there are adequate controls in place including the security of your data and other personal information."[8]

20. Despite recognizing its duty to do so and boasting of its cybersecurity measures, on information and belief, Horizon has not implemented reasonable cybersecurity safeguards or policies to protect its client's Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Horizon leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to the Sensitive Information in its care.

***The Data Breach***

21. On information and belief, Defendant collects and maintains its clients' current and former patients' Sensitive Information in its computer systems.

22. In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

23. According to Defendant's Breach Notice, on December 27, 2024, it "learned that a computer virus was used to lock access to some files stored on our computer network."[9] Thereafter, it launched an investigation, which revealed that "that files on certain systems were likely copied without permission between December 26 and 27 [2024]."[10]

24. Defendant states it "undertook an intensive review of those files, which concluded on May 20, 2025" and that various types of Sensitive Information, including general health insurance claims processing information, non-address contact information, dates of birth, Social

---

[8] N. 1.
[9] Ex. A.
[10] *Id.*

Security numbers, driver's license numbers, passport numbers, payment card information, or checking or financial account information was affected.[11]

25. Defendant's statement that a "computer virus was used to lock access to some files stored on our computer network"[12] indicates that it was the victim of a ransomware attack.

26. According to the United States Cybersecurity and Infrastructure Security Agency ("CISA"), ransomware is a form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable.[13] Thereafter, the cybercriminals demand a ransom payment in exchange for decryption, often threatening to sell or leak exfiltrated data if the ransom is not paid.[14]

27. Horizon, while not expressly acknowledging it paid a ransom demand, states that it "arranged for the party responsible for this matter to delete the copied information."[15]

28. However, even if Defendant made a ransom payment, there is no guarantee that the Sensitive Information stolen in the Data Breach will be deleted.[16] The stolen Sensitive Information is valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[17]

29. Thus, on information and belief, Plaintiff's and the Class's stolen Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web.

30. And yet, on information and belief, Defendant waited until on or around June 27,

---

[11] *Id.*
[12] *Id.*
[13] *Ransomware 101*, CISA, https://www.cisa.gov/stopransomware/ransomware-101 (last visited August 5, 2025).
[14] *Id.*
[15] Ex. A.
[16] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/.
[17] *Id.*

2025[18], before it notified victims that their Sensitive Information had been stolen in the Data Breach—38 days after Horizon stated it "review" of the stolen files was completed.[19]

31. Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

32. Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing its clients' patients' Sensitive Information. And thus, Defendant caused widespread injury and monetary damages.

33. Since the breach, Defendant claims that it "implemented additional technical measures and processes to further enhance [Defendant's] security."[20]

34. But such simple declarations are insufficient to ensure that Plaintiff's and Class Members' Sensitive Information will be protected from additional exposure in a subsequent data breach.

35. Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant against incidents of identity theft and fraud by reviewing account statements and monitoring [] free credit reports for suspicious activity and to detect errors."[21]

36. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach

[18] N. 4.
[19] Ex. A.
[20] *Id.*
[21] *Id.*

and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

37. On information and belief, Horizon has offered some Data Breach victims 12 months of complimentary credit monitoring, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

38. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

39. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its clients' current and former patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

40. Additionally, Horizon employs intentionally confusing language in its Breach Notice, claiming that "certain systems were likely copied without permission" and that it "arranged for the party responsible for this matter to delete the copied information."[22]

41. This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts.

42. Despite Defendant's intentional opacity about the root cause of the Data Breach

[22] *Id.*

and its impact, several facts can be gleaned from the notice including that: (1) this data breach was the work of cybercriminals; (2) cybercriminals successfully infiltrated Horizon's network environment; and (3) once inside, cybercriminals targeted highly private information for download and theft.

43. In the context of data breach notice letters of this type, Defendant's use of the phrase "likely copied without permission" is misleading. Organizations only send notice letters because data breach notification laws require them to do so, and notice letters are only sent to those persons who Defendant itself reasonably believes had Sensitive Information actually acquired by an unauthorized individual.

44. Therefore, upon information and belief, Horizon's Breach Notice is intentionally misleading, and intentionally downplays the severity of the Data Breach and the threat it poses to thousands of individuals.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice***

45. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

46. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendant knew or should have known that its electronic records and consumers' Sensitive Information would be targeted by cybercriminals.

47. Indeed, healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past 14 years, with 2021 seeing more data breaches reported

than any other year since records first started being published by HHS' Office of Civil Rights ("OCR").[23]

48. In 2023, the OCR reported a 239% increase in hacking-related data breaches between January 1, 2018, and September 30, 2023, and a 278% increase in ransomware attacks over the same period.[24] In 2019, hacking accounted for 49% of all reported breaches, and in 2023, 79.7% of data breaches were due to hacking incidents.[25]

49. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[26]

50. Cyberattacks on medical systems and healthcare partner and provider companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[27]

51. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Horizon.

---

[23] Steve Adler, *Healthcare Data Breach Statistics*, THE HIPAA JOURNAL (May 26, 2025), https://www.hipaajournal.com/healthcare-data-breach-statistics/.
[24] *Id.*
[25] *Id.*
[26] *Gordon M. Snow Statement*, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector.
[27] Ben Kochman, *FBI, Secret Service Warn Of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

***Plaintiff's Experience***

52. Plaintiff Barbara Morrow Keeton is a patient of Bon Secours, a healthcare provider client of Defendant. On information and belief, Defendant held Plaintiff Keeton's Sensitive Information on its computer network at the time of the Data Breach.

53. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff Keeton's Sensitive Information for theft by cybercriminals and sale on the dark web.

54. Indeed, in the aftermath of the Data Breach, an unknown individual logged into Plaintiff Keeton's Medicare account and attempted to change the home address associated with the account. Plaintiff Keeton believes that her non-public Social Security number was required to login to her account without her authorization.

55. The attempted identity theft described above suggests Plaintiff Keeton's PII is being disseminated on the dark web. This is supported by Defendant's admission that Plaintiff Keeton's "non-address contact information" was "copied" in the Data Breach.

56. As a result of the Data Breach notice, Plaintiff Keeton spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Breach Noice and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

57. Plaintiff Keeton has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff Keeton fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

58. Plaintiff Keeton has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or

inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

59. Plaintiff Keeton has suffered actual injury in the form of damages to and diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff Keeton entrusted to Defendant, which was compromised in and as a result of the Data Breach.

60. Plaintiff Keeton suffered actual injury from the exposure of her Sensitive Information—which violates her rights to privacy.

61. Plaintiff Keeton has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

62. Plaintiff Keeton has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

63. Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

64. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

65. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

66. The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

67. It can take victims years to spot identity theft, giving criminals plenty of time to use that information to commit acts of identity theft and fraud.

68. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

69. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

70. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

71. Defendant disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

72. Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability

to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

73. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

74. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that it keeps;

b. properly dispose of Sensitive Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

75. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

76. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

77. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

78. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

79. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep Defendant's clients' current and former patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [28]

80. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[29]

---

[28] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[29] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

81. The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their

functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

82. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fails to Comply with Industry Standards***

83. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

84. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

85. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

86. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

87. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**CLASS ACTION ALLEGATIONS**

88. Plaintiff sues on behalf of herself and the proposed class ("Class"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All individuals residing in the United States whose Sensitive Information was compromised in the Data Breach experienced by Defendant including all those who received notice of the breach.

89. Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

90. Plaintiff reserves the right to amend the class definition.

91. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of, on information and belief, thousands of members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

    i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

    ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    iii. Whether Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

    iv. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether Defendant's Breach Notice was reasonable;

vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

92. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual Plaintiff are insufficient to make individual lawsuits economically feasible.

## COUNT I
**Negligence**
**(On Behalf of Plaintiff and the Class)**

93. Plaintiff realleges all paragraphs as if fully set forth below.

94. Plaintiff and members of the Class (or their third-party agents) entrusted their Sensitive Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

95. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the

compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

96. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

97. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

98. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

99. Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

100. Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

101. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff realleges all paragraphs as if fully set forth below.

103. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

104. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect its clients' current and former patients' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Sensitive Information.

105. Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

106. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

107. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the

healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

108. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

109. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damage that would result to individuals in the event of a breach, which ultimately came to pass.

110. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

111. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

112. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

113. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

114. Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

115. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

116. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

117. Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

118. Plaintiff realleges all paragraphs as if fully set forth below.

119. Plaintiff and Class Members either directly contracted with Defendant or Plaintiff and Class Members were the third-party beneficiaries of contracts with Defendant.

120. Plaintiff and Class Members (or their third-party agents) were required to provide their Sensitive Information to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class Members (or their third-party agents) provided their Sensitive Information to Defendant or its third-party agents in exchange for Defendant's services.

121. Plaintiff and Class Members (or their third-party agents) reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

122. Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

123. Plaintiff and the Class Members (or their third-party agents) accepted Defendant's offers by disclosing their Sensitive Information to Defendant or its third-party agents in exchange for services.

124. In turn, and through internal policies, Defendant agreed to protect and not disclose the Sensitive Information to unauthorized persons.

125. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's Sensitive Information.

126. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

127. After all, Plaintiff and Class Members (or their third-party agents) would not have entrusted their Sensitive Information to Defendant (or their third-party agents) in the absence of such an agreement with Defendant.

128. Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

129. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

130. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

131. Defendant materially breached the contracts it entered with Plaintiff and Class Members (or their third-party agents) by:

a. failing to safeguard their Sensitive Information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Sensitive Information that Defendant created, received, maintained, and transmitted.

132. In these and other ways, Defendant violated its duty of good faith and fair dealing.

133. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed supra).

134. And, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web.

135. Plaintiff and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

136. Plaintiff realleges all paragraphs as if fully set forth below.

137. Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendant benefitted from using their Sensitive Information to provide dental retail software services.

138. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents). And Defendant benefited from receiving Plaintiff's and Class members' Sensitive Information, as this was used to provide dental benefit services.

139. Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that

they were required to provide based on Defendant's duties under state and federal law and its internal policies.

140. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' Sensitive Information.

141. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

142. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' payment because Defendant failed to adequately protect their Sensitive Information.

143. Plaintiff and Class members have no adequate remedy at law.

144. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

145. Plaintiff realleges all paragraphs as if fully set forth below.

146. Plaintiff and Class Members had a legitimate expectation of privacy regarding their Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

147. Defendant owed a duty to Plaintiff and Class Member to keep their Sensitive Information confidential.

148. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Sensitive Information is highly offensive to a reasonable person.

149. Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Sensitive Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

150. Defendant's failure to protect Plaintiff's and Class Members' Sensitive Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

151. Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

152. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Sensitive Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

153. As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

154. As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

155. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Sensitive Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

156. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

157. Plaintiff, on behalf of herself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Sensitive Information.

158. Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT VI
## Breach of Fiduciary Duty
## (On Behalf of Plaintiff and the Class)

159. In light of the special relationship between Defendant Horizon and Plaintiff and Class Members (or their third-party agents), whereby Defendant became guardian of Plaintiff's and Class Members' Sensitive Information, Defendant became a fiduciary by its undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Sensitive Information; (2) to timely notify

Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

160. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Horizon's relationship with their third-party agents, Plaintiff's and the Class's healthcare providers, to keep secure their Sensitive Information.

161. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

162. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Sensitive Information.

163. Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

164. Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Sensitive Information.

165. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their

Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

166. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

Dated: November 19, 2025

Respectfully submitted,

*/s/ Amina A. Thomas*
Amina A. Thomas (No. 34451-49)
Lynn A. Toops (No. 26386-49)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com
athomas@cohenmalad.com

Raina Borrelli*
**STRAUSS BORELLI PLLC**
One Magnificent Mile
980 N Michigan Ave, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff and Proposed Class*

**Pro Hac Vice forthcoming*